CASE NOS. 11-2534/12-1698

IN THE
**UNITED STATES COURT OF APPEALS**
FOR THE SIXTH CIRCUIT

--------------------------------

United States of America

*Plaintiffs-Appellee,*

v.

Marlan McRae

*Defendant-Appellant*

**On Appeal from the United States District Court
for the Western District of Michigan
Southern Division**

---

FINAL BRIEF OF APPELLANT (REDACTED)

---

Gerald M. Lorence (P16801)
David Herskovic (P68897)
Attorney(s) for Defendant/Appellant
30300 Northwestern Highway, Suite 318
Farmington Hills, Michigan 48334
(313) 961-9055

*Attorneys for Defendant-Appellant*

# TABLE OF CONTENTS

Page

INDEX OF AUTHORITIES ....................................................................... iii

JURISDICTIONAL STATEMENT ........................................................... 1

STATEMENT IN SUPPORT OF ORAL ARGUMENT ........................................ 1

STATEMENT OF ISSUES PRESENTED FOR REVIEW .................................... 2

STATEMENT OF THE CASE ................................................................. 3

STATEMENT OF RELEVANT FACTS ...................................................... 5

SUMMARY OF THE ARGUMENT ....................................................... 15

ARGUMENT

I.    THE DEFENDANT'S CONVICTION MUST BE REVERSED AND
      DISMISSED, BECAUSE THE GOVERNMENT ENGAGED IN
      MISCONDUCT BY FORUM SHOPPING PURSUANT TO US CONST.
      AM. VI CODIFIED FRCP.18 ..................................................... 16

II.   THE DISTRICT COURT ERRED IN DENYING THE DEFENDANT'S
      MOTION FOR A NEW TRIAL PURSUANT TO F.R.C.P. 33 ................. 22

III.  THE COURT ERRED IN FORCING THE JURY TO CONTINUE TO
      DELIBERATE BEYOND A REASONABLE POINT............................... 32

IV.   THE DISTRICT COURT ALLOWING TESTIMONY THAT THE
      DEFENDANT HAD BURNED DOWN HIS HOUSE WHEN THERE WAS
      NO EVIDENCE TO SUPPORT SUCH A STATEMENT WAS IN
      VIOLATION OF FRE 404(B) DENIED THE DEFENDANT HIS DUE
      PROCESS RIGHT TO A FAIR TRIAL ....................................... 37

V.    THE INAPPROPRIATE AND BORDERLINE ILLEGAL ACTIONS
      TAKEN BY DEFENSE COUNSEL DURING THE DEFENDANT'S
      TRIAL RENDERED COUNSEL INEFFECTIVE AND DENIED THE
      DEFENDANT HIS DUE PROCESS RIGHTS TO A FAIR TRIAL........... 44

**VI.**   THE DISTRICT COURT ERRED IN NOT IMMEDIATELY STRIKING THE TESTIMONY OF TOMMIE HODGES FOLLOWING HIS PLEADING THE FIFTH, AND THE COURT'S WAITING SEVERAL DAYS TO DO SO, WHILE TAKING OTHER WITNESS TESTIMONY IN THE TIME BETWEEN THE EVOCATION AND THE COURT'S DETERMINATION PREJUDICED THE DEFENDANT AND DENIED THE DEFENDANT A FAIR TRIAL............................................................ 51

CONCLUSION........................................................................................... 55

CERTIFICATE OF SERVICE .............................................................. 56

CERTIFICATE OF COMPLIANCE ...................................................... 57

DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS.............. 58

# INDEX OF AUTHORITIES

**Cases:**                                                                                    **Pages(s)**

*Andrews v. United States*,
817 F.2d 1277 (7th C. 1987)...................................................................................... 19

*Bollenbach v. United States*,
326 U.S. 607, 612-13, 66 S. Ct. 402, 90 L. Ed. 350 (1946) ................................... 32

*Chapman v. California,*
386 U.S. 18, 23, 87 S.Ct. 824, 827, 17 L.Ed.2d 705 (1967).................................. 24

*Cuyler v. Sullivan,*
446 U.S. 335, 349-350, 100 S.Ct. 1708, 1717, 64 L.Ed.2d 333 (1980) ............ 24,25

*Davis v. Alaska,*
415 U.S. 308, 316, 39 L. Ed. 2d 347, 94 S. Ct. 1105 (1974).................................. 52

*Dowling v. United States*,
493 U.S. 342, 348-49, 107 L. Ed. 2d 708, 110 S. Ct. 668 (1990) .......................... 38

*Early v. Packer,*
537 U.S. 3, 8, 123 S. Ct. 362, 154 L. Ed. 2d 263 (2002) ....................................... 33

*Gibson v. United States,*
271 F.3d 247, 258 (6th C., 2001)........................................................................... 33

*Glasser v. United States,*
315 U.S. 60, 76, 62 S.Ct. 457, 467, 86 L.Ed. 680 (1942)....................................... 24

*Holloway v. Arkansas,*
435 U.S. 475, 489, 98 S.Ct. 1173, 1181, 55 L.Ed.2d 426 (1978).......................... 23

*Hooks v. Workman,*
606 F.3d 715 (10th C., 2010)............................................................................. 34,35

*Huddleston v. United States*,
485 U.S. 681, 689, 99 L. Ed. 2d 771, 108 S. Ct. 1496 (1988)..................... 38,39,40

*Lipson v. U.S.*,
233 F.3d 942 (7th C., 2000)...................................................................................... 27

*LoCascio v. U.S.*,
395 F.3d 51 (2nd C., 2005) ...................................................................................... 26

*Lowenfield v. Phelps*,
484 U.S. 231, 241, 108 S. Ct. 546, 98 L. Ed. 2d 568 (1988).................................. 33

*Massaro v. United States*,
538 U.S. 500, 504–05 (2003)...................................................................... 28,29,30

*Mills v. Tinsley*,
314 F.2d 311, 313 (10th C.), *cert. denied,* 374 U.S. 847 (1963) ............................ 32

*Mitchell v. Kirk*,
20 F.3d 936, 937 (8th C., 1994)................................................................................ 51

*Nationwide Mut. Fire Ins. Co. v. Ford Motor Co.*,
174 F.3d 801, 805 (6th C., 1999)............................................................................... 51

*Strickland v. Washington,*
466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)................................... 24

*United States v. Allen*,
160 F.3d. 1096 (6th C., 1998)................................................................................... 32

*United States v. Bakke*,
942 F.2d 977, 981 (6th C., 1991).............................................................................. 39

*United States v. Beddow,*
957 F.2d 1330, 1335-36 (6th C., 1992) ................................................................... 17

*United States v. Bell,*
516 F.3d 432, 441 (6th C., 2008)......................................................................... 38,42

*United States v. Blankenship*,
775 F.2d 735, 739 (6th C., 1985)............................................................................. 39

*United States v. Cabrales,*
524 U.S. 1, 6-7, 118 S. Ct. 1772, 141 L. Ed. 2d 1 (1998)........................................16

*United States v. Clark,*
319 Fed Appx. 395 (6th C. 2009)...............................................................................16

*United States v. Daniel,*
956 F.2d 540, 543 (6th C., 1992)............................................................................. 28

*See United States v. Feinman,*
930 F.2d 495, 499 (6th C., 1991).............................................................................. 39

*U.S. v. Gullett,*
713 F.2d 1203 (6th C., 1983), *cert. denied,* 464 U.S. 1069 (1984).......................... 52

*United States v. Hall,*
200 F.3d 962, 965-66 (6th C., 2000) ....................................................................... 25

*United States v. Harrigan,*
80 Fed Appx. 738,742 (3rd C. 2003)........................................................................ 18

*United States v. Ismail,*
756 F.2d 1253, 1258-1259 (6th C., 1985) ................................................................ 39

*United States v. Jamal,*
246 Fed Appx. 351,368 (6th C. 2007)...................................................................... 18

*United States v. Jenkins,*
593 F.3d 480, (6th C., 2010)............................................................................... 40,41

*United States v. Jones,*
399 F.3d 640, 647 (6th C., 2005)............................................................................. 22

*United States v. Johnson,*
323 U.S. 273, 274, 65 S. Ct. 249, 89 L. Ed. 236 (1944)...........................................16

*United States v. Lattner,*
385 F.3d 947, 955 (6th C., 2004)......................................................................... 38,42

*United States v. Leachman,*
309 F.3d 377 (6th C., 2002)..................................................................... 33

*United States v. Mack,*
258 F.3d 548, 553 (6th C., 2001)............................................................ 37

*United States v. Matthews,*
440 F.3d 818, 828 (6th C., 2006)............................................................ 40

*United States v. Minieri,*
303 F.2d 550 (2nd C.,), *cert. denied,* 371 U.S. 847 (1962)...................... 32

*United States v. Mitchell,*
104 Fed Appx. 544, 549 (6th C., 2004) ................................................... 33

*United States v. Muhammad,*
502 F.3d 646, 652, 655 (7th C., 2007).................................................... 17

*United States v. Myers,*
102 F.3d 227 (6th C., 1996).................................................................... 39

*United States v. Pearson,*
203 F.3d 1243,1264 (10th C. 2000)........................................................ 18

*United States v. Perry,*
438 F.3d 642, 647 (6th C., 2006)............................................................ 37

*United States v. Pugh,*
405 F.3d 390, 397 (6th C., 2005)............................................................ 22

*United States v. Rayborn,*
495 F.3d 328, 341 (6th C., 2007)............................................................ 37

*United States v. Reed,*
773 F.2d 477, 481 (2nd C., 1985) ........................................................... 17

*United States v. Ronder,*
639 F.2d 931, 934 (2nd C., 1981) ........................................................... 32

*United States v. Ruggiero*,
928 F.2d 1289, 1299 (2nd C., 1991) ........................................................................ 32

*United States v. Stephens*,
549 F.3d 459, 462 (6th C., 2008) ............................................................................ 37

*United States v. Thomas*,
146 U.S.App.D.C. 101, 449 F.2d 1177, 1181 (1971) ............................................. 33

*United States v. Turner*,
936 F.2d 221, 226 (6th C., 1991) ............................................................................ 17

*United States v. Utrera*,
259 Fed Appx 724, 729. (6th C., 2008) .................................................................16

*United States v. Vance*,
871 F.2d 572, 575 (6th C., 1989), *cert. denied*, 493 U.S. 933 (1989) ..................... 39

*United States v. Wesley*,
417 F.3d 612 (6th C., 2005) .................................................................................... 40

*United States v. Williams*,
274 F.3d 1079, 1084 (6th C., 2001) ........................................................................ 41

*United States v. Wilmington*,
131 Fed Appx. 336 (3rd C. 2005) ............................................................................ 19

*United States v. Zimmerman*,
155 F. App'x 821, 826 (6th C., 2005) ................................................................ 28,29

## Statutes and Court Rules:

18 U.S.C. §3231 ....................................................................................................... 1

18 U.S.C. § 3237(a) ............................................................................................... 17

21 U.S.C 846 ..................................................................................................... 1,3,4

21 U.S.C. 841(a)(1) .......................................................................................... 1,3,4

21 U.S.C. 841b)(1)(A)(ii))................................................................... 1,3,4

28 U.S.C. 1291............................................................................................. 1

28 U.S.C. § 2255..................................................................... 28,29,30

Federal Rule of Criminal Procedure 18 .................................................. 16

Federal Rule of Evidence 403................................................................... 38

Federal Rule of Evidence 404(b)............................................... 37,38,39,42

**U.S. Constitution**

U.S. Const. Amend. VI............................................................................16

## **Statement of Subject Matter and Appellate Jurisdiction**

The court below had jurisdiction to entertain this matter pursuant to 18 U.S.C. §3231 in that the action pertained to an alleged violation of **21 U.S. Code 846 and 841(a)(1) and (b)(1)(A)(ii)**. This statute provides that, "The district courts of the United States shall have original jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States." 18 U.S.C. §3231.

The Sixth Circuit Court of Appeals has jurisdiction to entertain this appeal pursuant to 28 U.S.C. §1291. Final Judgment was entered on November 30, 2011 (R. 700, Judgment, Page ID #4221-4226) and a Notice of Appeal was filed on December 6, 2011. (R. 705, Notice of Appeal-Final Judgment, Page ID #4265).

## **Statement Regarding Oral Argument**

The Defendant, Marlan McRae, respectfully submits that the issues raised herein may be further developed, and therefore submits that Oral Argument is necessary in this matter.

Respectfully Submitted,

S/ David Herskovic

Gerald M. Lorence (P16801)
David Herskovic (P68897)
Attorney(s) for Defendant/Appellant

1

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

**I.** Whether the defendant's conviction must be reversed and dismissed, because the Government engaged in misconduct by forum shopping pursuant to US Const. Am. VI Codified F.R.C.P.18

**II.** Whether the District Court erred in denying the Defendant's Motion for a New Trial pursuant to F.R.C.P.33

**III.** Whether the District Court erred in forcing the jury to continue to deliberate beyond a reasonable point.

**IV.** Whether the District Court allowing testimony that the Defendant had burned down his house when there was no evidence to support such a statement was in violation of FRE 404(b) denied the Defendant his due process right to a fair trial.

**V.** Whether the inappropriate and borderline illegal actions taken by defense counsel during the Defendant's trial rendered counsel ineffective and denied the Defendant his due process rights to a fair trial.

**VI.** Whether the District Court erred in not immediately striking the testimony of Tommie Hodges following his pleading the fifth, and the Court's waiting several days to do so, while taking other witness testimony in the time between the evocation and the court's determination prejudiced the Defendant and denied the Defendant a fair trial.

## STATEMENT OF THE CASE

Marlan Micah McRae appeals from his conviction and sentence after an eleven (11) day jury trial before the Honorable Paul L. Maloney, in the United States District Court, Western District of Michigan, Southern Division.

Mr. McRae was charged with Conspiracy to Distribute and Possess With Intent to Distribute Five Kilograms or more of Cocaine, in violation of 21 U.S. Code 846 and 841(a)(1) and (b)(1)(A)(ii). On December 1, 2009, Mr. McRae was indicted by a Grand Jury. (R. 114, Indictment, Page ID #323-349). From April 26- May 12, 2011, Mr. McRae was afforded a jury trial on the charges of Conspiracy to Distribute and Possess With Intent to Distribute Five Kilograms or more of Cocaine, in violation of 21 U.S. Code 846 and 841(a)(1) and (b)(1)(A)(ii). At the conclusion of trial, the jury issued a verdict of guilty. (R. 640, Jury Verdict, Page ID# 3214-3216).

On March 5, 2012, Mr. McRae filed a Motion for a New Trial. (R. 735, Motion for a New Trial, Page ID #4833-4841). On May 10, 2012, the District Court subsequently denied Mr. McRae's Motion. (R. 756, Order on Motion for New Trial, Page ID #4985-4989). On November 21, 2011, the court held a sentencing hearing. The Court imposed a sentence of 235

months, followed by five years of supervised release, (R. 779, Trial.

11/21/11, pg. 26).[1]

---

[1] Page ID # not available on hard copy provided to Appellate Counsel, and as such will not
be listed on citations relating to Trial Transcripts)

## STATEMENT OF RELEVANT FACTS

Defendant-Appellant Marlan Micah McRae, (hereafter referred to as "Defendant") was charged with Conspiracy to Distribute and Possess With Intent to Distribute Five Kilograms or more of Cocaine, contrary to 21 U.S. Code 846 and 841(a)(1) and (b)(1)(A)(ii), in an eleven (11) day jury trial before the Honorable Paul L. Maloney, in the United States District Court, Western District of Michigan, Southern Division. The Defendant was thereafter sentenced to term of 235 months, followed by five years of supervised release, (R. 779, Trial. 11/21/11, pg. 26).

The Defendant was allegedly tied to the conspiracy through Mr. Lindell Brown, Mr. Charles Jackson and specifically through Mr. James Dylan Hayes.

Mr. Lindell Brown testified that he began to obtain cocaine through Mr. Donnie Charles, who had already established a drug pipeline to Detroit, through Mr. James Dylan Hayes. (R. 769, Trial. 4/29/11, pg. 865). He further stated that through Mr. Charles, he met Mr. Charles Jackson Sr., who was partners with Mr. Charles. (R. 769, Trial. 4/29/11, pgs. 867-868). On cross-examination, Mr. Brown admitted, however, that he had never met nor had any dealings with the Defendant in his life. (R. 769, Trial. 4/29/11, pg. 962).

Mr. Alvin Anderson, the brother of Mr. James Hayes, testified that he was a co-conspirator on the case, and had pled guilty to Using a Telephone to Facilitate a Drug Conspiracy, and was awaiting sentencing at the time of trial. (R. 769, Trial. 4/29/11, pg. 1007). Mr. Anderson stated that he would assist in delivering drugs for his brother, who was receiving cocaine from Mr. Charles Jackson and Mr. Kevin Emerson (a courier for Mr. Jackson) since the early 1990's. (R. 769, Trial. 4/29/11, pgs. 1010-1011). Mr. Anderson testified that one of the individuals he would deliver cocaine to was the Defendant, and that said deliveries began in 2005. (R. 769, Trial 4/29/11, pgs. 1025-1026,1043). Pursuant to his handwritten notes, which were admitted into evidence as Government Exhibit 408A, the Defendant had been delivered twenty-nine kilos of cocaine. (R. 769, Trial 4/29/11, pg. 1028). Mr. Anderson indicated that he would deliver the drugs to the Defendant's home, on Hamburg Street, in the City of Detroit, and that the Defendant would just walk out to Mr. Anderson's van and remove the drugs. (R. 769, Trial 4/29/11, pg. 1031). He further stated that he had known the Defendant before delivering him drugs, as the Defendant used to live across the street from Mr. Anderson's grandmother and had bought a car from a car lot owned by James Dylan Hayes, where Mr. Anderson worked. (R. 770, Trial 5/3/11, pg. 1095)

6

On cross-examination, Mr. Anderson admitted that he had told the US Attorney and other Law enforcement agencies, in his proffer, that Mr. Hayes, his brother, had been supplying the Defendant with cocaine from 2000 to 2007. (R. 769, Trial 4/29/11, pg. 1044). Mr. Anderson also admitted that he had been trafficking drugs prior to 2005, which was contrary to his earlier testimony, and that he had been dealing marijuana in the early 1990's. (R. 769, Trial 4/29/11, pgs. 1049-1050).

Mr. James Dylan Hayes testified that he has been trafficking drugs since the mid 1990's. (R. 772, Trial 5/5/11, pg. 2041). He indicated that he originally started getting pounds of marijuana from Mr. Charles Jackson, whom he was introduced to by Marlese Lloyd Anderson, a cousin of Mr. Hayes. (R. 772, Trial 5/5/11, pgs. 2043, 2047). He further indicated that he provided Mr. Jackson with addresses to use on false Michigan identification that Mr. Jackson obtained.  (R. 772, Trial 5/5/11, pg. 2045). Mr. Hayes indicated that he stopped selling marijuana in late 1990's and switched to cocaine, at the behest of Mr. Jackson. (R. 772, Trial 5/5/11, pg. 2047).

Mr. Hayes testified that he was involved in drug trafficking with the Defendant, in that any time Mr. Hayes would receive a shipment of cocaine, the Defendant would be there to purchase portions of it from him. (R. 772, Trial 5/5/11, pg. 2056). He stated that, if on average, he was receiving

7

seventy kilos of cocaine, the Defendant would purchase anywhere from ten to twenty kilos each time. (R. 772, Trial 5/5/11, pg. 2079).   On cross-examination, Mr. Hayes admitted that after he had been arrested and let out on bond, he went and obtained a false identification so he could leave the jurisdiction, but was re-arrested before he could leave the state. (R. 774, Trial 5/10/11, pgs. 2407-2409). He also admitted that even though he had provided five proffers to the US Attorney, he had failed to inform them that he had allegedly delivered cocaine to the Defendant at an apartment in Detroit, on more than ten separate occasions. (R. 774, Trial 5/10/11, pg. 2451).

Officer Joel Mires, of the Lansing Police Department testified that on December 22, 2009, he assisted in a search of the Defendant's home in Macomb Michigan. (R. 773, Trial 5/6/11, pg. 2143). Officer Mires indicated that during the search, several pieces of jewelry, furs, US Currency and residency paperwork were seized from the home. (R. 773, Trial 5/6/11, pg. 2145).   On cross-examination, Officer Mires admitted that there were no drugs, nor any drug paraphernalia found in the Defendant's home during the execution of the search warrant. (R. 773, Trial 5/6/11, pg. 2154).

Officer Michael Patti, of the Detroit Police Department, testified that on July 6, 2006, he had prepared a search warrant for a home located at

17433 Hamburg, in the City of Detroit, which was owned by the Defendant, and was part of the team who executed the warrant. (R. 773, Trial 5/6/11, pgs. 2168, 2203). Officer Patti indicated the search of the home uncovered two safes, each filled with a large amount of money, large amounts of cocaine, heroin and marijuana, several handguns, equipment to press cocaine and heroin into blocks and a stolen motorcycle. (R. 773, Trial 5/6/11, pgs. 2168-2169).[2] Officer Patti stated that he returned the following day to see if there were any cars parked near or on the property, and in doing so, found that the house had burned down overnight. (R. 773, Trial 5/6/11, pg. 2179).

On cross-examination, Officer Patti admitted that the search warrant provided descriptions of people who could be in the house. The people listed included a person known as "Turd", described as a black male, 33 years of age, five foot ten, 180 pounds with a goatee and a Mohawk, and a person known as "Bird", described as a black male, 36 years of age, five foot ten, 222 pounds, stocky build, short hair and a goatee. (R. 773, Trial 5/6/11, pg. 2186). Officer Patti indicated that "Turd" was identified as Mr. Delmar Warren, and "Bird" was identified as Mario McRae. (R. 773, Trial 5/6/11, pg. 2199). He also admitted that latent fingerprints were taken from the

---

[2] A stipulation was made in which it was noted that the Defendant's fingerprints were found to match those of latent fingerprints found on a brown paper bag containing cocaine found inside the home. (TR. 5/6/11, pg. 2204).

package of cocaine found in the home, and said fingerprints were those of Mr. Warren. (R. 773, Trial 5/6/11, pg. 2195).

Agent Steven Toth, of the Bureau of Alcohol, Tobacco and Firearms, Lansing Division, testified that he was the lead agent on the ATF investigation into the AHH DEE AHH drug trafficking organization. (R. 774, Trial 5/10/11, pg. 2312). Agent Toth stated that he was in charge of drafting federal seizure warrants regarding the present matter, and that in total there were over fifty cars, fifty bank accounts and several pieces of real estate seized. (R. 774, Trial 5/10/11, pg. 2313). On cross-examination, Agent Toth admitted that there were no federal search warrants for the Defendant's home. (R. 774, Trial 5/10/11, pg. 2322).

Mr. Charles Jackson Sr., testified that he began selling drugs, as a street level dealer, in the early to mid 1980's. (R. 774, Trial 5/10/11, pg. 2510). He indicated that he quickly moved into larger quantities, and that his drug trafficking led to a murder conviction in Oklahoma in 1987, for which he served seven years in prison. (R. 774, Trial 5/10/11, pg. 2511). Upon being released from prison, Mr. Jackson began to traffic cocaine to Michigan in 1997, as a result of meeting, and becoming intimate with, Ms. Marlese Anderson, who was from Detroit. (R. 774, Trial 5/10/11, pg. 2513). Through Ms. Anderson, Mr. Jackson met Mr. Hayes, with whom he and Mr. Donnie

Charles agreed to traffic cocaine from Los Angeles to Detroit. (TR. 5/10/11, pg. 2520). Mr. Jackson indicated that Mr. Robert Farias Sr., and his son, Co-Defendant Farias, were supplying all of his cocaine. (R. 774, Trial 5/10/11, pg. 2528).

Mr. Jackson further testified that Kevin Emerson would transport the cocaine from Los Angeles to Detroit in vans and motor homes provided by Mr. Jackson, each of which were equipped with secret compartments to store the drugs and the money. (R. 774, Trial 5/10/11, pg. 2533). Mr. Jackson indicated that one of the motor homes, the 2003 Revolution, was paid for partially, by Co-Defendant Firemprong. (R. 774, Trial 5/10/11, pg. 2535). Once the motor home was purchased, Mr. Jackson waited a few weeks, and then had the motor home titled in Michigan under Mr. Hayes's name and then from Mr. Hayes's name to Mr. Emerson's name. (R. 774, Trial 5/10/11, pg. 2551). He explained that he used other people to purchase the motor homes because he was a fugitive and was using aliases, thereby not permitting him to show credit to purchase the motor homes himself. (R. 774, Trial 5/10/11, pg. 2538).

On cross-examination, Mr. Jackson indicated that he never had six hundred thousand dollars stored in a washing machine in Ms. Marlese Anderson's basement, and that he was not aware that Mr. Hayes had

11

allegedly stolen said money from the basement of the home. (R. 775, Trial 5/11/11, pg. 2619). He admitted that he never sold Mr. Hayes marijuana in the late 1990's, though he did acknowledge that he was selling him cocaine during that same time period. (R. 775, Trial 5/11/11, pg. 2621). Mr. Jackson also indicated that he did not know, nor ever meet or have any dealings with the Defendant. (R. 775, Trial 5/11/11, pg. 2662).

The Defendant Motioned the Court for Acquittal on venue grounds, in addition to a lack of evidence, pursuant to Federal Rule of Criminal Procedure 29. (R. 776, Trial 5/12/11, pgs. 2907-2912, 2914-2916). The Court subsequently denied the Defendant's motion. (R. 776, Trial 5/12/11, pgs. 2917-2919). The Defendant then presented his opening statement to the jury, having reserved the opportunity at the beginning of trial. (R. 776, Trial 5/12/11, pgs. 2932-2945).

Sgt. Daniel Zolnai, of the Lansing Police Department, testified that he is the officer in charge of the Defendant's case. (R. 776, Trial 5/12/11, pg. 2976). He indicated that during the course of his investigation, he was provided information regarding an individual named Marlon Cooper, who is also known as "Little Marlon". (R. 776, Trial 5/12/11, pg. 2976). Sgt. Zolnai stated that he obtained information that Mr. Cooper was disabled, was involved in illegal narcotic sales and was a known to be a friend of the

Defendant. (R. 776, Trial 5/12/11, pg. 2977). He also stated that Mr. Cooper was not known to have an alias of "Marlan", but rather, only went by "Marlon". (R. 776, Trial 5/12/11, pg. 2986).

Following the testimony of Sgt. Zolnai, the Defendant and co-defendant's rested their cases. (R. 776, Trial 5/12/11, pg. 2993, 2996). The Defendant placed onto the record his waiver of his right to testify on his own behalf. (R. 776, Trial 5/12/11, pgs. 2999-3000). Closing Arguments were then presented by the Prosecution (R. 776, Trial 5/12/11, pgs. 3040-3063, 3122-3134), Co-Defendant Firemprong (R. 776, Trial 5/12/11, pgs. 3063-3078), the Defendant (R. 776, Trial 5/12/11, pgs. 3078-3099) and Co-Defendant Farias. (R. 776, Trial 5/12/11, pgs. 3099-3121). Following jury instructions and deliberations, the jury found the Defendant Guilty of Conspiracy to Distribute and Possess With Intent to Distribute Five Kilograms or more of Cocaine, contrary to 21 U.S. Code 846 and 841(a)(1) and (b)(1)(A)(ii). (R. 776, Trial 5/12/11, pg. 3177). The Defendant was thereafter sentenced to 235 months, to be followed by five years of supervised release, (R. 779, Trial 11/21/11, pg. 26), and required that forfeiture be paid in the amount of $17,280,000.00, in addition to the forfeiture of assorted jewelry valued at $58,050.00; eight fur coats valued at $46,600.00; 14,372 in US Currency, savings bonds and foreign currency;

$125.75 in rare coins and savings bonds. (R. 779, Trial 11/21/11, pgs. 6-7). In total, the court issued a judgment of $17,160,854.25 against the Defendant. (R. 779, Trial 11/21/11, pg. 7).

## SUMMARY OF THE ARGUMENTS

1.  The Government utilized forum shopping in trying their case in the Western District of Michigan in order to ensure a favorable jury pool to ensure convictions.

2.  The District Court erred in not, at a minimum, conducting an evidentiary hearing to determine if defense counsel's actions warranted a finding of ineffective assistance of counsel.

3.  The District Court erred in requiring the jury to deliberate until 11pm at night, when the jury sent a note making it obvious that they were concerned about their families.

4.  The presentation of accusations that the Defendant burned down his own home was improper, unrelated to the case and highly prejudicial.

5.  The illegal and inappropriate actions of defense counsel denied the Defendant his due process right to the effective assistance of counsel.

6.  The District Court erred in waiting three trial days to strike the testimony of Tommie Hodges, to the prejudice of the Defendant. If the Court needed time to make the determination, than it should have estopped any further testimony until the matter was resolved, and by allowing testimony, the Court denied the Defendant's due process right to a fair trial.

# I. THE DEFENDANT'S CONVICTION MUST BE REVERSED AND DISMISSED, BECAUSE THE GOVERNMENT ENGAGED IN MISCONDUCT BY FORUM SHOPPING PURSUANT TO US CONST. AM. VI CODIFIED FRCP.18

**Standard of Review**

Because this issue addresses a Constitutional claim, review is *de novo*. *United States v. Clark*, 319 Fed Appx. 395 (6th C. 2009).

**Discussion**

For venue purposes in federal criminal cases, Congress has the power to create a "continuing offense" by defining "the locality of a crime [to] extend over the whole area through which force propelled by an offender operates." *United States v. Johnson*, 323 U.S. 273, 274, 65 S. Ct. 249, 89 L. Ed. 236 (1944). The Constitution provides that venue for a criminal prosecution must be the district where the crime was committed. U.S. Const. Amend. VI. The Federal Rules of Criminal Procedure codify this requirement. F.R.C.P. 18. A defendant is guaranteed a trial in the State and District where the offense was committed. *United States v. Utrera,* 259 Fed Appx 724, 729. (6th C., 2008). The site of the commission of the crime charged must be determined from the nature of the crime alleged and the location of the act or acts constituting it. *United States v. Cabrales,* 524 U.S. 1, 6-7, 118 S. Ct. 1772, 141 L. Ed. 2d 1 (1998). Congress has provided that venue for continuous crimes occurs in any district where the "offense was

16

begun, continued, or completed." 18 U.S.C. § 3237(a). "Conspiracy and drug importation are continuous crimes; that is, they are not completed until the drugs reach their final destination, and venue is proper in any district along the way." *United States v. Turner,* 936 F.2d 221, 226 (6[th] C., 1991); *see also United States v. Williams,* 274 F.3d 1079, 1084 (6[th] C., 2001).

The Sixth Circuit also employs a substantial contacts test to determine venue. *United States v. Williams,* 788 F.2d 1213, 1215 (6th C., 1986). The purpose of this test is to determine venue when "Congress has not prescribed venue for the offense." *Id.* at 1215 n.3. We have also applied the substantial contacts test to determine which districts qualify as venues under 18 U.S.C. § 3237(a). *See United States v. Beddow,* 957 F.2d 1330, 1335-36 (6th C., 1992). Other circuits have used the substantial contacts test to ensure that venue is constitutionally adequate. *See, e.g., United States v. Muhammad,* 502 F.3d 646, 652, 655 (7th C., 2007); *United States v. Reed,* 773 F.2d 477, 481 (2nd C., 1985). The substantial contacts test instructs courts to look to "the site of the defendant's acts, the elements and nature of the crime, the locus of the effect of the criminal conduct, and the suitability of each district for accurate fact finding." *Williams,* 788 F.2d at 1215.

In theory, one could argue that venue was proper in the Western District of Michigan because the defendant was charged as a part of a

conspiracy, and a portion of the drugs shipped from California ended up in Lansing. However, by choosing to try the case in the Western District, the Government engaged in forum shopping, which denied the Defendant of his due process right to a fair trial. As this Court has recognized "a defendant does not have the right to shop for a forum in which his criminal case may be heard." *United States v. Jamal*, 246 Fed Appx. 351,368 (6th C. 2007). This rule applies equally to the Government. Generally, if criminal charges can be brought in more than one forum, the Government is free to exercise their discretion in selecting the forum where they will bring the charges. Thus, nothing prevents the Government from seeking dismissal of a state or local prosecution in favor of a federal forum. In order to show that a prosecutor abused this discretion and thereby violated a defendant's due process rights, a defendant must present "clear evidence" that the decision to prosecute in a particular forum was predicated on impermissible grounds. *United States v. Harrigan*, 80 Fed Appx. 738,742 (3rd C. 2003)(internal cite omit). As the Tenth Circuit has found "a system that allows prosecutorial judge-shopping arguably lacks the appearance of impartiality that is required to obtain the confidence of the public and the accused in the system." *United States v. Pearson*, 203 F.3d 1243,1264 (10th C. 2000).

In the case of *Andrews v. United States*, 817 F.2d 1277 (7th C. 1987), the Seventh Circuit recognized the concept that the United States could, in some cases, manipulate the forum in order to prosecute in a more "forum friendly" court. The court indicated that under such circumstances, the proper remedy would be for the district court to transfer the case to the more proper forum. *Id.* at 1279

In the case of *United States v. Wilmington*, 131 Fed Appx. 336 (3rd C. 2005), the defendant was initially prosecuted in state court; the Government received an adverse result, and his case was then transferred to federal court. Although the defendant did not apparently raise a "forum shopping" issue, the Court was concerned enough to address the issue in its opinion. The Court noted "given the discretion traditionally afforded to prosecutors when a crime can be brought in more than one forum, [cite omit] this forum shopping is not easily remedied . . . .In the meantime, however, we think it important to continue to register our concerns with this kind of gamesmanship. It is a practice that is inconsistent with considerations of fundamental fairness and impedes the 'high function' of the judicial system that we all should be more concerned about." *Id.* at 340.

The Defendant submits that the conduct of the Government in the present matter, was clearly improper forum shopping. This was not a case

where the United States picked federal prosecution over state prosecution: the United States chose a forum (the Western District of Michigan) to try their cases against the three defendants. The Government could have brought this case in several different jurisdictions, including Los Angeles where the alleged conspiracy originated and Detroit (the Eastern District of Michigan), where the cocaine was shipped to before being disbursed and ending up in Lansing, Michigan. It is important to note that all three Defendants were minorities. The Western District of Michigan is considered very conservative in nature, and there is a small minority population from which a jury pool is drawn. It is in complete and stark contrast to both Los Angeles and Detroit, both of which have a much larger minority (black and Hispanic) population from which a jury could be drawn, thereby creating a more level playing field for all parties involved. It is evident that the Government's actions were clearly intended to try to find the perfect forum for the Government's successful prosecutions, which would give them the best odds that they could obtain a conviction. Such conduct is highly inappropriate, and warrants vacating the convictions.

**Remedy**

The Defendant was charged as part of a conspiracy, and because of the nature of the charges, the Government had their choice of several

different jurisdictions in which to try their case against the Defendant and the other members of the conspiracy. By no coincidence, the Government chose to try its case in the Western District of Michigan. It is a venue that is not only very conservative in nature as opposed to either Los Angeles or Detroit, but also has far less of a minority population from which a jury could be drawn, thereby creating an unlevel playing field in favor of the Government. Such action on the part of the Government is unconscionable and denies the Defendant his due process right to a fair trial. As such, the Defendant, Marlan McRae prays the Honorable Court find the Government forum shopped for their own benefit to the detriment of the Defendant and as a result, the Defendant is entitled to a new trial in the proper venue.

## II. THE DISTRICT COURT ERRED IN DENYING THE DEFENDANT'S MOTION FOR A NEW TRIAL PURSUANT TO FED.R.CRIM.PRO 33

**Standard of Review**

A District Court's denial of a motion for new trial is reviewed under an abuse of discretion standard. *United States v. Jones*, 399 F.3d 640, 647 (6th C., 2005). A District Court abuses its discretion when it applies an incorrect legal standard, misapplies the correct legal standard, or relies upon clearly erroneous findings of fact. *United States v. Pugh*, 405 F.3d 390, 397 (6th C., 2005).

**Discussion**

Following the Defendant's trial, and subsequent to present counsel substituting in as Appellate Counsel, the Defendant motioned the District Court for a new trial. (R. 735, Motion for New Trial, Page ID #4833-4841). Within said motion, the Defendant requested that the District Court conduct an evidentiary hearing to allow the Defendant to establish and expand the record, to permit the Defendant to bring his ineffective assistance of counsel claim on direct appeal. The District Court denied this Motion, and in doing so, failed to even acknowledge this request. It is the Defendant's contention that this denial was in error and a clear abuse of discretion on the part of the District Court.

The Defendant's motion for a new trial was based on the fact that he had received ineffective of counsel during his trial, and that the conduct of defense counsel was so egregious that his actions and inactions were tantamount to a manifest injustice, which denied the Defendant his due process rights to effective assistance of counsel. More specifically, the Defendant alleged that the failure of trial counsel to file a Motion for a Mistrial unless the Defendant paid him another fifty thousand ($50,000.00) dollars to re-try his case, when such a motion was necessary and required, created a conflict of interest between the Defendant's interest in being acquitted and trial counsel's own pecuniary interests. Further, trial counsel committed an act of extortion by telling his client, Mr. McRae that he wouldn't bring a Motion for a Mistrial, when a witness, Mr. Tommie Hodges, testified for several hours before taking the fifth on re-direct-examination.

A defendant's Sixth Amendment right to effective assistance of counsel includes the right to representation by conflict-free counsel. The right to counsel's undivided loyalty is a critical component of the right to assistance of counsel; when counsel is burdened by a conflict of interest, he deprives his client of his Sixth Amendment right as surely as if he failed to appear at trial. *Holloway v. Arkansas,* 435 U.S. 475, 489, 98 S.Ct. 1173,

23

1181, 55 L.Ed.2d 426 (1978) (quoting *Chapman v. California,* 386 U.S. 18, 23, 87 S.Ct. 824, 827, 17 L.Ed.2d 705 (1967))("The mere physical presence of an attorney does not fulfill the Sixth Amendment guarantee when the advocate's conflicting obligations have effectively sealed his lips on crucial matters"). For this reason, a defendant who shows an actual conflict need not demonstrate that his counsel's divided loyalties prejudiced the outcome of his trial. *Cuyler v. Sullivan,* 446 U.S. 335, 349-350, 100 S.Ct. 1708, 1717, 64 L.Ed.2d 333 (1980). The right to conflict-free counsel is simply too important and absolute "to allow courts to indulge in nice calculations as to the amount of prejudice arising from its denial." *Glasser v. United States,* 315 U.S. 60, 76, 62 S.Ct. 457, 467, 86 L.Ed. 680 (1942); accord, *Cuyler , supra,* at 349. We should be no more willing to countenance nice calculations as to how a conflict adversely affected counsel's performance. "The conflict itself demonstrate[s] a denial of the 'right to have the effective assistance of counsel.'" *Cuyler, supra,* at 349, (quoting *Glasser, supra,* at 76.)

In a general ineffective assistance of counsel claim, a defendant must demonstrate that (1) the performance of his counsel was deficient, and (2) the deficient performance thereby prejudiced the defense and deprived the defendant of a fair trial. *Strickland v. Washington,* 466 U.S. 668, 687, 104

S.Ct. 2052, 80 L.Ed.2d 674 (1984). The analysis is slightly different in conflict of interest cases. When there is an actual conflict of interest, prejudice will be presumed. *Id.* at 692. However, "[p]rejudice is presumed only if the defendant demonstrates that counsel 'actively represented conflicting interests' and that 'an actual conflict of interest adversely affected his lawyer's performance.'" *Id.* (quoting *Cuyler, supra,* at 348.

In determining whether an actual conflict of interest exists, the Sixth Circuit has held that it "will not find an actual conflict unless appellant can point to *specific instances* in the record to suggest an actual conflict or impairment of their interests.... *Appellants must make a factual showing of inconsistent interests and must demonstrate that the attorney made a choice between possible alternative courses of action,* such as eliciting (or failing to elicit) evidence helpful to one client but harmful to the other. If he did not make such a choice, the conflict remained hypothetical.... *There is no violation where the conflict is irrelevant or merely hypothetical;* there must be an actual significant conflict. *United States v. Hall,* 200 F.3d 962, 965-66 (6[th] C., 2000) (emphasis added) (internal quotations omitted).

To show that such a conflict adversely affected his or her counsel's performance, the petitioner must establish an "actual lapse in representation" that resulted from the conflict. *Cuyler, supra* at 349. This is a two-part

showing (1) the petitioner must demonstrate the existence of some plausible alternative defense strategy not taken up by counsel; and (2) the petitioner must show "causation," that is, that the alternative defense was inherently in conflict with or not undertaken emphasized the attorney's other loyalties or interests. *LoCascio v. U.S.,* 395 F.3d 51 (2nd C., 2005). In other words, the petitioner must show that trial counsel chose not to undertake the alternative strategy because of his conflict. *Id.*

In the current matter, after Mr. Hodges testified exclusively citing numerous instances of drug activity involving the Defendant. On re-direct-examination, Mr. Hodges plead the fifth and refused to answer any further questions, at which time, he stepped down from the witness stand and was never brought before the jury again. Trial counsel then left the courtroom with the Defendant to discuss how to proceed. The Defendant, along with his wife, asked his trial counsel to Motion the Court for a Mistrial. Trial counsel refused to bring the Motion for a Mistrial unless the Defendant agreed to pay him fifty thousand ($50,000.00) dollars for representing the Defendant in a new trial. The Defendant advised trial counsel that he didn't have another $50,000. Thereafter, when a motion was made for a mistrial by the other two counsels representing the co-defendants (R.774, Trial 5/10/11, pgs. 2377-2387), defense counsel for Mr. McRae failed to join in, even

though he was the only one who was directly affected and had prior standing. The District Court subsequently denied the motion made by counsel for the co-defendants. (R.774, Trial 5/10/11, pg. 2382)

Other Circuit Courts, such as the Seventh Circuit Court of Appeals, have relied on the notion that a petitioner who desires to raise a claim of ineffective assistance of counsel based on conflict of interest to proceed under either of two theories: either (1) by establishing that the trial judge knew or should have known that the potential conflict of interest existed, in which case the court of appeals will presume that the defendant was prejudiced by this conflict if the trial judge made no inquiry into it; or (2) in cases in which the trial judge was not put on notice of the potential conflict, by demonstrating that his counsel actively represented conflicting interests and that this conflict adversely affected counsel's performance. See *Lipson v. U.S.*, 233 F.3d 942 (7th C., 2000).

In the present instance, the actions of trial counsel, or rather lack thereof, prejudiced the Defendant's right to a fair trial. Failing to Motion for a Mistrial based on the testimony of Tommie Hodges and the Court's delay in instructing the Jury to strike said testimony alone would warrant ineffective assistance of counsel. When you add in Trial Counsel's reason for doing so, that being his own pecuniary interest, this Court should have no

other option but to grant the Defendant a new trial. Counsel's actions clearly prejudiced the Defendant, in that the Court's delay in instructing the jury to disregard the testimony was prejudicial as it was, and failing to call out the Court on its error, further worsened said prejudice. In denying the Defendant's Motion for a New Trial and a remand for an evidentiary hearing, the District Court stated the following:

> Thus, to reach the merits of Mr. McRae's motion, this court would not only need to hold an evidentiary hearing, but solicit further briefing from both parties.

> This need for further evidentiary findings is one reason why the Sixth Circuit disfavors ineffective-assistance claims on direct review: "As a general matter, an ineffective assistance of counsel claim should be brought pursuant to a habeas petition under 28 U.S.C. § 2255." *United States v. Zimmerman*, 155 F. App'x 821, 826 (6[th] C., 2005) (citing *United States v. Daniel*, 956 F.2d 540, 543 (6[th] C., 1992); *Massaro v. United States*, 538 U.S. 500, 504–05 (2003)). Indeed, the *Zimmerman* panel chided a district court for reaching the substance of such a claim. *Id.* ("The district court properly denied Zimmerman's motion for a new trial based on the ineffective assistance of counsel, although it should have done so without reaching the motion's merits."). Mr. McRae acknowledges that "the proper avenue, pursuant to the Court's rules and prior judicial history, would be to bring this motion pursuant to a 28 USC 2255 appeal [sic] once the Defendant-Appellant's appeal as of right is heard." (Reply Br., ECF No. 755, at 4.) But he argues that "this is an extraordinary circumstance, which demands attention immediately." (Reply Br., ECF No. 755, at 4.) Mr. McRae has not convinced the court of this, however. If Mr. McRae's right to a new trial were clear, the court's duty to "secure the just, speedy, and inexpensive determination of every action and proceeding," Fed. R. Civ. P. 1, would militate strongly toward an immediate decision. But this claim is not clear. If Mr.

28

McRae's allegations are true, his trial counsel's conduct is deeply troubling. But even so, it is far from obvious that this conduct violated Mr. McRae's Sixth Amendment rights so as to entitle him to a new trial. As such, the court sees no reason that this claim would be better resolved by disturbing the ongoing appellate proceedings (assuming that the Sixth Circuit agreed to remand the case) and ordering an evidentiary hearing, as opposed to the standard practice of resolving ineffective-assistance claims on collateral review. The court therefore declines to reach the merits of Mr. McRae's claim at this time, instead leaving his ineffective assistance claim for collateral review, as *Zimmerman* instructs.

The District Court, however, ignored the analysis put forth in *Massaro*, *supra*. While the key issue dealt with by the court was that a failure to raise an ineffective-assistance-of-counsel claim on direct appeal does not bar the claim from being brought in a later, appropriate proceeding under § 2255, the analysis put forth to back up their contention holds weight in the present case. The Court reasoned that while the preference is to bring the issue of ineffective assistance on a collateral appeal, rather than on direct, it is not a steadfast rule. *Id.* at 505. The Court further stated that issues of ineffective assistance of counsel would ordinarily be litigated in the first instance in the District Court, the forum best suited to developing the facts necessary to determining the adequacy of representation during trial. The court may take testimony from witnesses for the defendant and the prosecution and from the counsel alleged to have rendered the deficient performance. *Id.*

The reasoning put forth by the *Massaro* court as it pertains to why the issue should be brought on collateral appeal apply to present case and why the District Court should have granted an evidentiary hearing. The *Massaro* court held that a § 2255 motion often will be ruled upon by the same district judge who presided at trial. *Id.* As such, the judge, having observed the earlier trial, should have an advantageous perspective for determining the effectiveness of counsel's conduct and whether any deficiencies were prejudicial. *Id.* In this instance, the Defendant asked the Trial Court to consider the issue of whether Defense Counsel was ineffective, and to do so specifically because it would establish a proper record, and because the district court judge had sat through all of the Defendant's trial and was very familiar with defense counsel and how he had conducted himself in trial.[3]

The District Court's reasoning however, fails to take any of this into account. We are not talking about trial counsel's failure to object to hearsay. Rather, we are talking about trial counsel attempting to extort money from the Defendant, and trial counsel's failure to Motion the District Court for a Mistrial when all the facts demanded it. It is evident that the district court wants nothing more to do with this case, and their reliance on the notion that collateral review is the proper method to determine this issue reinforces that

---

[3] Further examples of Trial Counsel's inappropriate conduct will be discussed in Issue V, *infra.* More specifically, the Defendant will also be alleging that trial counsel threatened a government witness.

point. The Court had no desire to conduct the hearing because it appears that it did not want to have to sit through another long retrial which could potentially result should the court in fact find that the actions of defense counsel denied the Defendant his due process right to a fair trial.

Even if the District Court did not find sufficient reasons to grant a new trial, it had sufficient reason and need to conduct an evidentiary hearing. Such inaction on the Court's part denied the Defendant his due process rights to a fair trial, which necessitates an order that District Court be made by this Court to conduct an evidentiary hearing and/or that the Defendant's conviction be overturned.

## Remedy

The District Court abused its discretion by choosing not to grant the Defendant an evidentiary hearing, when it was evident that there were serious questions as to legality and unethical nature of the actions alleged to have been made by trial counsel. Moreover, the District Court denied the Defendant his due process right to a fair trial. As such, the Defendant's convictions should be overturned, or in the alternative, this Court should remand this matter to the District Court, and order an evidentiary hearing to determine the severity of defense counsel's ineffectiveness and whether it prejudiced the Defendant's due process rights.

## III. THE COURT ERRED IN FORCING THE JURY TO CONTINUE TO DELIBERATE BEYOND A REASONABLE POINT.

**Standard of Review**

Issues related to jury procedure are entitled to *de novo* review. *United States v. Allen*, 160 F.3d. 1096 (6th C., 1998).

**Discussion**

Jury deliberations represent a "critical stage of a criminal trial." *United States v. Ruggiero*, 928 F.2d 1289, 1299 (2nd C., 1991) (quoting *United States v. Ronder*, 639 F.2d 931, 934 (2nd C., 1981) (citing *Bollenbach v. United States*, 326 U.S. 607, 612-13, 66 S. Ct. 402, 90 L. Ed. 350 (1946)). Therefore, it is of vital importance, that the jury be free from any outside influences, including those from the trial court itself. Ordinarily, the length of time a jury may be kept together for deliberation is a matter for the sound discretion of the trial judge. *Mills v. Tinsley,* 314 F.2d 311, 313 (10th C.), *cert. denied,* 374 U.S. 847, 83 S.Ct. 1907, 10 L.Ed.2d 1067 (1963); *United States v. Minieri,* 303 F.2d 550 (2nd C.,), *cert. denied,* 371 U.S. 847, 83 S.Ct. 79, 9 L.Ed.2d 81 (1962). The time a jury may be compelled to deliberate is necessarily limited by the prohibition against forcing the jury to agree upon a verdict. *See Tinsley, supra* at 313. The question presented is whether the efforts of the trial judge to secure a verdict placed such pressure on the jurors that at least one of them might have surrendered views that he or she

conscientiously entertained. *United States v. Thomas,* 146 U.S.App.D.C. 101, 449 F.2d 1177, 1181 (1971).

"Any criminal defendant . . . being tried by a jury is entitled to the uncoerced verdict of that body." *Lowenfield v. Phelps*, 484 U.S. 231, 241, 108 S. Ct. 546, 98 L. Ed. 2d 568 (1988). When considering a claim that the trial court's actions or instructions coerced the jury's verdict, a reviewing court must apply a totality-of-the circumstances test. *See Early v. Packer*, 537 U.S. 3, 8, 123 S. Ct. 362, 154 L. Ed. 2d 263 (2002) (per curiam) (citing *Lowenfield*, *supra* at 248-50); *Gibson v. United States*, 271 F.3d 247, 258 (6th C., 2001), *overruled in part on other grounds by United States v. Leachman*, 309 F.3d 377 (6th C., 2002).

While this court has held and recognized that a district court is not required to interrupt deliberations and require the jury to break, *United States v. Mitchell*, 104 Fed Appx. 544, 549 (6th C., 2004), it is implicit within such findings the premise, that if a jury wants to take a break, they should be permitted to do so. In this instance, following an eleven (11) day trial, the jury was released to deliberate at 6:10 pm. Prior to being released, the jury was given instructions, which did not include an instruction on its ability to request a break, or an option to break for the evening. Roughly fours after deliberations had begun, the jury sent a note to the Judge, asking

permission to have the Judge's office contact the jury's families, to let them know that they were still at the courthouse. (R. 640-1, Jury Note, Page ID # 3217). Defense counsel for all three Defendants, asked the court to allow the jury to be released for the evening, noting the length of time (14 hours) they had all been in court that day, in addition to the overall length of the trial. (R. 776, Trial 5/12/11, pgs. 3172-3173). By the trial court's own admission it had had "zero" communication with the jury regarding a choice to go home. (R. 776, Trial 5/12/11 pg. 3174). Moreover, the Trial Court added "I don't think this jury is shy in asking for things. If they request that they want to go home, then I'll grant that request. But until I hear from them on that subject, I'm going to let them continue." (R. 776, Trial 5/12/11 pg. 3174). Just short of an hour later, the jury returned with a guilty verdict on all counts against the Defendant and his Co-Defendant, Dr. Firemprong, and a not guilty verdict against Co-Defendant Farias.

Other circuits have held that requiring a jury to continue to deliberate beyond the time they wanted to break for the evening was coercive. For instance, in *Hooks v. Workman*, 606 F.3d 715 (10th C., 2010), the 10th Circuit Court found that that "the district court's logistical instructions concerning their further deliberations increased the pressure on the jury to reach a unanimous verdict. No matter their technical accuracy, a clear import was

that the jury must continue to deliberate, perhaps indefinitely, either through the night or the next morning after a night of sequestration. *Id.* at 750.

In the present instance, it was evident from the jury's note that they wanted to communicate with their families. Having sat through three weeks of trial, and ending with a 14-hour day, it can be inferred that the Jury was tired and losing traction. Such circumstances are hardly optimal to permit a positive deliberation on all the issues and evidence presented to them throughout the trial. While they did not ask directly for the break, it was requested by all three Defendant's, and at a minimum, the District Court should have, at a minimum, inquired with the Jury as to whether they wished to continue, or to break and come back the following day to continue their deliberations. Based on the amount of evidence alone, the nature of the charges, the fact that there were three defendants upon which to deliberate and the short amount of time in which the jury deliberated, it is easily inferred that the verdicts handed down were coerced. As such, it is imperative that the Defendant's convictions be vacated, and the Defendant be afforded a new trial.

**Remedy**

The Trial Court was in error in denying trial counsel's request to break for the evening, rather than forcing the jury to continue deliberations.

Moreover, there was no justifiable reason for the Trial Court to not inquire with the Jury, as to whether they wished to end for the day or continue. The burden was on the Court to properly handle the jury, consider the length of time the jury had been performing and their earlier-declared concern for their family knowing where they were, and not for the Court to shift the burden upon the jury to notify the Court when they had enough or wanted to go home. Therefore, the Defendant's conviction likely resulted from coercion, requiring that his conviction be overturned. As such, the Defendant respectfully requests that this Honorable Court overturn the Defendant's conviction and grants him a new trial.

## IV.  THE DISTRICT COURT ALLOWING TESTIMONY THAT THE DEFENDANT HAD BURNED DOWN HIS HOUSE WHEN THERE WAS NO EVIDENCE TO SUPPORT SUCH A STATEMENT WAS IN VIOLATION OF FRE 404(B) DENIED THE DEFENDANT HIS DUE PROCESS RIGHT TO A FAIR TRIAL.

**Standard of Review**

In reviewing a district court's admission or exclusion of evidence, the Court typically employs an abuse of discretion standard. *United States v. Mack,* 258 F.3d 548, 553 (6th C., 2001). When Rule 404(b) is at issue, however, a three-part test is applied: (1) the Court reviews for clear error the district court's factual determination that "other acts" occurred; (2) we then review *de novo* the district court's legal determination that the evidence was admissible for a proper purpose; and (3) finally we review for abuse of discretion the district court's determination that the probative value of the other acts evidence outweighs the unfairly prejudicial effect. *United States v. Stephens,* 549 F.3d 459, 462 (6th C., 2008); *see also United States v. Rayborn,* 495 F.3d 328, 341 (6th C., 2007); *United States v. Perry,* 438 F.3d 642, 647 (6th C., 2006).

**Discussion**

Federal Rule of Evidence 404(b) states in relevant part:

(b) Other Crimes, Wrongs, or Acts -- Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of

motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . . .

Evidence admitted under Rule 404(b) is also subject to the balancing test of Rule 403 which provides that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice . . . ." Fed. R. Evid. 403. A district court must follow a three-part inquiry for the admission of Rule 404(b) evidence. First, the district court must make a preliminary determination regarding whether there is sufficient evidence that the "other acts" took place. The district court must then determine whether those "other acts" are admissible for a proper purpose under Rule 404(b). Finally, the district court must determine whether the "other acts" evidence is more prejudicial than probative. *United States v. Lattner,* 385 F.3d 947, 955 (6th C., 2004); *accord United States v. Bell,* 516 F.3d 432, 441 (6th C., 2008). If the other acts evidence is admitted under Rule 404(b), a district court must properly instruct the jury on the limited purpose for which the evidence is offered. *Bell, supra* at 441.

In the Rule 404(b) context, similar act evidence is relevant "only if the jury can reasonably conclude that the act occurred and that the defendant was the actor." *See Huddleston v. United States*, 485 U.S. 681, 689, 99 L. Ed. 2d 771, 108 S. Ct. 1496 (1988); *see also Dowling v. United States*, 493 U.S. 342, 348-49, 107 L. Ed. 2d 708, 110 S. Ct. 668 (1990) (noting that the

court need not conclude that the defendant committed the other act beyond a reasonable doubt to admit the testimony, the standard is whether a jury could reasonably conclude that the act was committed and that the defendant committed the act). When considering whether prior bad acts evidence was introduced for a proper purpose under Rule 404(b), it must be remembered that Rule 404(b) is an inclusionary, rather than exclusionary, rule. *See, e.g., United States v. Blankenship*, 775 F.2d 735, 739 (6th C., 1985). *See also, e.g, United States v. Myers*, 102 F.3d 227 (6th C., 1996); *United States v. Bakke*, 942 F.2d 977, 981 (6th C., 1991); *United States v. Vance*, 871 F.2d 572, 575 (6th C., 1989), *cert. denied*, 493 U.S. 933, 107 L. Ed. 2d 313 (1989). Specifically, the Rule provides that "evidence of other crimes, wrongs or acts" may be admissible for purposes such as "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." FRE 404(b). While the law is clear that evidence of past criminal activity is inadmissible to show criminal propensity, *United States v. Ismail*, 756 F.2d 1253, 1258-1259 (6th C., 1985), "Rules 401 and 402 establish the broad principle that relevant evidence - evidence that makes the existence of any fact at issue more or less probable - is admissible unless the Rules provide otherwise." *Huddleston, supra* at 686. *See United States v. Feinman*, 930 F.2d 495, 499 (6th C., 1991) ("To determine whether the proffered

evidence is admissible for a proper purpose, the trial court must decide, 'whether the evidence is probative of a material issue other than character.'" (quoting *Huddleston*, *supra* at 686)).

However, even if the Government provides a proper basis for admission, the evidence should only be admitted if it is supported by fact. This court has routinely required that "other-act evidence be admitted only if, after an examination of all the evidence in the case, the trial court concludes that the jury could reasonably find by a preponderance of the evidence that the act occurred and that the defendant was the actor. *Id.* at 689-90. *United States v. Matthews*, 440 F.3d 818, 828 (6th C., 2006).

This court has found on several occasions that the inclusion of prior bad acts evidence was improperly introduced. In *United States v. Wesley*, 417 F.3d 612 (6th C., 2005), this court overturned the conviction of a defendant where prior bad acts were improperly introduced, where the government introduced evidence of the defendant's prior conviction as well as previously being in jail. In that instance, the court found that even if the evidence was admitted properly to show intent, that the prejudice to the defendant was so great that it was improper to admit the evidence. Furthermore, in *United States v. Jenkins*, 593 F.3d 480, (6th C., 2010), this court overturned the conviction of a defendant based upon the presentation,

in district court, of the defendant's prior drug conviction, to prove knowledge and intent. The court found, however, that "even if we assume for purposes of argument that evidence of a prior conviction has some probative value, that value is microscopic at best. Moreover, that value becomes invisible to the naked eye when the evidence is thrown in with the rest of the evidence in this case." *Id.* at 485. The Court went on to say that "even when properly instructed to consider the evidence only for some legitimate purpose-as the jury was instructed here-the danger is obvious that the jury will treat it as propensity evidence instead. Under the facts presented here, we are firmly convinced that the prejudicial effect of a prior conviction substantially outweighed its probative value. The admission of that evidence was error." *Id.* at 486.

In the present instance, during the direct examination of Mr. Hayes, there were questions concerning the home where Mr. Hayes allegedly delivered drugs to the Defendant, and the fact that the home burned down a day after the search warrant was executed on the home. An objection was made on 404(b) grounds by the Defendant, under the theory that an inference could be made that the Defendant was responsible for the arson, only for the objection to be overruled. (R.772, Trial 5/5/11, pgs. 2085-2088). It is the Defendant's contention that the District Court erred in permitting

this evidence in, and that the testimony and inferences resulting from it were more prejudicial than probative, and therefore denied the Defendant of his due process rights to a fair trial. Defense counsel once again failed to represent his client. Mr. Barnett should have motioned the Court again for a Mistrial, and he didn't. Why? Because he wasn't going to try the case again without getting his fifty thousand ($50,000.00) dollars.

As was stated previously, when faced with a question of whether evidence of prior bad acts should come in, a district court must follow a three-part inquiry for the admission of Rule 404(b) evidence. The District Court failed to do this. First, the district court must make a preliminary determination regarding whether there is sufficient evidence that the "other acts" took place. The district court must then determine whether those "other acts" are admissible for a proper purpose under Rule 404(b). Finally, the district court must determine whether the "other acts" evidence is more prejudicial than probative. *Lattner, supra* at 955; *accord Bell, supra* at 441. If the other acts evidence is admitted under Rule 404(b), a district court must properly instruct the jury on the limited purpose for which the evidence is offered. *Bell, supra* at 441.

In this instance, the District Court took none of these steps in allowing the evidence. Had the Court done so, it would have had no choice but to find

42

that there was no evidence that the Defendant set his own home on fire. Even if the Court were to find that the Defendant was responsible for it, the burning of the home, following the execution of the search warrant, would not go to show proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. Its only purpose would therefore be to show criminal propensity, which is not a proper purpose. As such, because criminal propensity is the only motivating factor in introducing the evidence, then the District Court would have had no choice but to not allow the evidence in, and to strike the specific testimony from Mr. Hayes and certainly consider strongly to grant a Motion for Mistrial. Because this testimony was allowed to come in, the Defendant was denied his due process rights to a fair trial.

**Remedy**

The inclusion of other acts evidence against the Defendant was admitted for an improper purpose and proved more prejudicial than probative. As such, the inclusion of this testimony denied the Defendant a fair trial. Therefore, the Defendant's conviction should be overturned and the Defendant should be afforded a new trial.

**V. THE INAPPROPRIATE AND BORDERLINE ILLEGAL ACTIONS TAKEN BY DEFENSE COUNSEL DURING THE DEFENDANT'S TRIAL RENDERED COUNSEL INEFFECTIVE AND DENIED THE DEFENDANT HIS DUE PROCESS RIGHTS TO A FAIR TRIAL.**

This Argument has been redacted from the Appellant's Brief pursuant to Court order

This Argument has been redacted from the Appellant's Brief pursuant to Court order

This Argument has been redacted from the Appellant's Brief pursuant to Court order

This Argument has been redacted from the Appellant's Brief pursuant to Court order

This Argument has been redacted from the Appellant's Brief pursuant to Court order

This Argument has been redacted from the Appellant's Brief pursuant to Court order

This Argument has been redacted from the Appellant's Brief pursuant to Court order

## VI. THE DISTRICT COURT ERRED IN NOT IMMEDIATELY STRIKING THE TESTIMONY OF TOMMIE HODGES FOLLOWING HIS PLEADING THE FIFTH, AND THE COURT'S WAITING SEVERAL DAYS TO DO SO, WHILE TAKING OTHER WITNESS TESTIMONY IN THE TIME BETWEEN THE EVOCATION AND THE COURT'S DETERMINATION PREJUDICED THE DEFENDANT AND DENIED THE DEFENDANT A FAIR TRIAL.

**Standard of Review**

This Court reviews a district court's conduct during trial for an abuse of discretion. *Nationwide Mut. Fire Ins. Co. v. Ford Motor Co.*, 174 F.3d 801, 805 (6th C., 1999). Where, a party fails to object to allegedly prejudicial conduct, however, this court then reviews for plain error. *Mitchell v. Kirk*, 20 F.3d 936, 937 (8th C., 1994). Based on court's striking the witness, it is inferred that the issue has been preserved, and therefore would be subject to the abuse of discretion standard.

**Discussion**

The Fifth Amendment to the United States Constitution provides that "no person shall be compelled in any criminal case to be a witness against himself." This privilege includes the right of a witness not to answer questions that might expose that witness to criminal liability. Moreover, the Sixth Amendment provides that "in all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." This right includes the opportunity to cross-examine a prosecution witness

as to the elements of that witness's direct testimony. *See Davis v. Alaska,*
415 U.S. 308, 316, 39 L. Ed. 2d 347, 94 S. Ct. 1105 (1974) ("Cross-
examination is the principal means by which the believability of a witness
and the truth of his testimony are tested").

Whether an invocation of the Fifth Amendment is proper requires a
court to determine whether the witness's invocation of that privilege
prejudices the defendant's right to cross-examine him. If so, a court must
strike the witness's entire testimony and instruct the jury to disregard it. In
*U.S. v. Gullett,* 713 F.2d 1203 (6th C., 1983), *cert. denied,* 464 U.S. 1069, 79
L. Ed. 2d 211, 104 S. Ct. 973 (1984), this court explained how this
determination is to be made:

> When a witness has properly invoked the privilege against self-
> incrimination, the question of whether to strike the witness'
> direct testimony turns on whether the defendants' inability to
> complete their inquiry created a "substantial danger of prejudice
> by depriving [them] of the ability to test the truth of the witness'
> direct testimony." If assertion of the privilege precludes inquiry
> into *matters which involve elements or specific events of the
> crimes charged,* there may be substantial danger of prejudice in
> not allowing the defendants to test the truth of the witness'
> direct testimony. In that case, all or part of the witness' direct
> testimony should be stricken. If, however, the invocation of the
> privilege merely precludes inquiry into *collateral matters which
> bear only on the general credibility of the witness,* there is little
> danger of prejudice to the defendant, and, therefore, the
> witness' direct testimony need not be stricken. *Id.* at 1208-09
> (internal citations omitted) (emphasis added).

There is no doubt that the court made the proper decision in striking

the testimony of Mr. Tommie Hodges from the record. The Court erred, however, in not making the decision to do so sooner, and, by allowing other witnesses to testify before the ultimate decision was made. By allowing the trial to continue on, and not adjourn the trial, even for a day, to allow the Fifth Amendment issue to be resolved, the court permitted testimony of other witnesses, including that of Mr. Hayes, to be taken into account by the jury. It is not outside the realm of possibility that this confused the jury and permitted the testimony of Mr. Hodges, before it was stricken, to sink into the juror's minds for over three days, while hearing other witnesses. Having not been instructed to strike the testimony of Mr. Hodges from their collective memories prior to Mr. Hayes's testimony, it is very likely that the jury utilized the testimony of Mr. Hodges to determine how credible the testimony of Mr. Hayes was, especially if certain aspects of their testimony lined up with the other.

Thus, even upon striking the testimony of Mr. Hodges, the jury had already been able to utilize the testimony of Mr. Hodges to make determinations on the testimony of Mr. Hayes. It is impossible to un ring a bell once it has been struck, and while the jury may have been instructed to disregard the testimony of Mr. Hodges, it is realistically impossible for them to have done so. An argument could have been made that because the jury

was allowed to hear other witnesses concerning the Defendant before the Court made its decision that the proper course of action would have been to declare a mistrial. Defense counsel failed to make such a motion, as was discussed previously, (and which lays even more credence to the notion of ineffective assistance of counsel), and as such, the jury was privy to information, which in theory, prejudiced the Defendant's ability to receive a fair trial.

**Remedy**

While the District Court ultimately made the proper decision to strike the testimony of Mr. Hodges, following his improper invocation of his Fifth Amendment rights, the timing of its decision was in error and an abuse of discretion. The timing of the court's decision, and the corollary decision to continue with trial before making its decision, had far reaching effects, which prejudiced the Defendant and denied the Defendant his due process right to a fair trial. As such, the Defendant's convictions were based on improper evidence and warrants that the Defendant's conviction be overturned.

## **CONCLUSION**

For the above stated reasons, the Defendant respectfully asks this Court to overturn the Defendant's conviction.

Respectfully Submitted,

s/ David Herskovic

Gerald M. Lorence (P16801)
David Herskovic (P68897)
Attorney(s) for Defendant/Appellant
30833 Northwestern Highway, Suite 121
Farmington Hills, Michigan 48334
(313) 961-9055

# <u>CERTIFICATE OF SERVICE</u>

STATE OF MICHIGAN    )
                     ) SS
COUNTY OF OAKLAND )

I, David Herskovic, being duly sworn, deposes and says that on the 13th day of February, 2013, I electronically filed the foregoing with the Clerk of the United States Court of Appeals for the Sixth Circuit, using the CM/ECF system, which will send notification of such filing to the following at their e-mail address on file with the Court:

Assistant United States Attorney Joel Fauson


_____

David Herskovic


Subscribed and sworn to before me
this ___[th] day of February, 2013.

56

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

1. I certify that this brief complies with the type volume limitation set forth in F.R.App.P. 32(a)(7)(B) because it contains eleven thousand eight hundred and ten (11,810) words, not including parts of the brief exempted by F.R.App.P. 32(a)(7)(B)(iii).

2. This brief also complies with the typeface requirements of F.R.App.P. 32(a)(6), because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14 point Times New Roman

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

---

**DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS**

---

In accordance with 6. Cir. R. 30, Appellant hereby designates as "Relevant District Court Documents" the following documents filed in the District Court and available via that court's electronic CM/ECF system:

| DESCRIPTION OF ENTRY | RECORD ENTRY NO. | PAGE ID # |
|---|---|---|
| Indictment | R.114 | 323-349 |
| Jury Verdict | R.640 | 3214-3216 |
| Sealed Transcript-In Camera Hearing | R.683 | 4114 |
| Judgment | R. 700 | 4221-4266 |
| Notice of Appeal-Final Judgment | R. 705 | 4265 |
| Motion for a New Trial | R.735 | 4833-4841 |
| Order on Motion for New Trial | R.756 | 4985-4989 |
| Transcript-Trial 4/26/2011 | R.766 | Page ID Numbers not available in Hard Copy provided to Defendant/Appellant |

| | | |
|---|---|---|
| Transcript-Trial 4/27/2011 | R.767 | Page ID Numbers not available in Hard Copy provided to Defendant/Appellant |
| Transcript-Trial 4/28/2011 | R.768 | Page ID Numbers not available in Hard Copy provided to Defendant/Appellant |
| Transcript-Trial 4/29/2011 | R.769 | Page ID Numbers not available in Hard Copy provided to Defendant/Appellant |
| Transcript-Trial 5/3/2011 | R.770 | Page ID Numbers not available in Hard Copy provided to Defendant/Appellant |
| Transcript-Trial 5/4/2011 | R.771 | Page ID Numbers not available in Hard Copy provided to Defendant/Appellant |
| Transcript-Trial 5/5/2011 | R.772 | Page ID Numbers not available in Hard Copy provided to Defendant/Appellant |
| Transcript-Trial 5/6/2011 | R.773 | Page ID Numbers not available in Hard Copy provided to Defendant/Appellant |
| Transcript-Trial 5/10/2011 | R.774 | Page ID Numbers not available in Hard Copy provided to Defendant/Appellant |
| Transcript-Trial 5/11/2011 | R.775 | Page ID Numbers not available in Hard Copy provided to Defendant/Appellant |

| | | |
|---|---|---|
| Transcript-Trial 5/12/2011 | R.776 | Page ID Numbers not available in Hard Copy provided to Defendant/Appellant |
| Transcript-Pretrial 4/18/11 | R.777 | Page ID Numbers not available in Hard Copy provided to Defendant/Appellant |
| Transcript-Forfeiture 11/15/2011 | R.778 | Page ID Numbers not available in Hard Copy provided to Defendant/Appellant |
| Transcript-Sentencing 11/21/2011 | R.779 | Page ID Numbers not available in Hard Copy provided to Defendant/Appellant |

Respectfully Submitted,


s/    David Herskovic

Gerald M. Lorence (P16801)
David Herskovic (P68897)
Attorney(s) for Defendant/Appellant

Date: February 13, 2013